_____ FILED          _____ ENTERED
_____ LOGGED         _____ RECEIVED

OCT 10 2013

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

**13-2422 SKG**          **13-2427 SKG**

## AFFIDAVIT IN SUPPORT OF A
## CRIMINAL COMPLAINT

### I.     AFFIANT AND EXPERTISE

1.     Your affiant, Special Agent Troy A. Dannenfelser, after being duly sworn, states as follows:

2.     Your affiant is an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

3.     Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and is currently assigned to a joint task force comprised of ATF agents and detectives from the Baltimore Police Department (BPD).  Your affiant has been employed by the ATF since 2003. Your affiant has participated in numerous investigations focusing on Controlled Dangerous Substance (CDS) trafficking, home invasions, gangs and illegal firearms. Your affiant has conducted covert surveillance of suspected CDS traffickers, interviewed numerous individuals involved in gangs and the CDS trafficking trade, participated in several Title III wiretap investigations as an affiant, monitor and member of surveillance teams, participated in the execution of numerous state and federal search and arrest warrants involving CDS traffickers and violent offenders, to include home invasion crews, and participated in the seizure of numerous firearms and controlled dangerous substances.

1

4.      This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint alleging that Langston JACKSON, Maxie GRAHAM, Juan BAILEY, Brandon LONG aka "Brandon Lane," Bradrick PAGE and Myesha BROWN, each: conspired to possess with the intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 846. Because this Affidavit is for the limited purpose of establishing probable cause to support the Criminal Complaint, it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the entities, individuals, and the events described in this Affidavit.

5.      The statements made in this Affidavit are based in part on:  (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; (c) information provided to me and other law enforcement officers by confidential sources of information; (d) criminal history records maintained by various law enforcement agencies, Baltimore Police Department ("BPD") and the National Criminal Information Center ("NCIC"); and (e) the training and experience of myself and other law enforcement agents and officers.

6.      I have participated in this investigation and from my personal participation in this investigation, as well as reports made to me by other agents and officers of the ATF, BPD and other law enforcement authorities, I am familiar with the facts and circumstances of this investigation.

7.      Not all the facts and information discovered during the course of this investigation have been included in this Affidavit. I have only included that information which is necessary to

2

establish probable cause for the issuance of the search warrants for the locations identified herein.

8.      To the best of my knowledge and belief, all statements made in this affidavit are true and correct.

## II.      **PROBABLE CAUSE**

### A.      **CASE BACKGROUND**

9.      In August 2013, the ATF began investigating a drug trafficking operation ("DTO") active in the vicinity of the 2700 and 2800 block of Harlem Avenue in Baltimore City, Maryland.  Based on evidence gathered to date, investigators believe that this operation is trafficking quantities of heroin and crack to retail customers on a daily basis.  Investigators believe that Langston JACKSON, aka "Turtle," is the leader of the operation (hereinafter the "JACKSON DTO") and that members include Juan BAILEY, Maxie GRAHAM, Myesha BROWN, Brandon LONG, and Bradrick PAGE.

### B.      **CONFIDENTIAL SOURCE INFORMATION**

10.      Pursuant to this investigation, investigators interviewed a confidential source of information (hereinafter "CS1") about the JACKSON DTO.  CS1 is a former drug dealer familiar with the drug trade in Baltimore City who knows JACKSON personally.  CS1 has worked with law enforcement for several months and has proved reliable information in the past. CS1 is currently being paid for his/her cooperation.

11.     CS1 reported that JACKSON is an armed drug dealer who sells heroin and crack cocaine from an open-air drug market ("drug shop") in the vicinity of the 2700 and 2800 block of Harlem Avenue.  CS1 reported that JACKSON sells his heroin under the brand name "Motivation."  CS1 identified Maxie GRAHAM, Juan BAILEY, and Myesha BROWN as employees of the JACKSON DTO.  CS1 also reported that JACKSON has robbed rival drug dealers in the past in order to obtain a ready supply of narcotics to sell.

12.     Investigators also interviewed a second confidential source of information (hereinafter "CS2") about his/her knowledge of JACKSON and his drug trafficking activities. CS2 has been involved in drug distribution, is familiar with the Baltimore drug trade and knows JACKSON personally. The information provided by CS2 has been corroborated to the extent possible and proven reliable.  CS2 is currently facing drug charges and is cooperating with law enforcement in the hopes of receiving a reduced sentence.

13.     CS2 reported that JACKSON is a drug dealer who currently operates an open-air heroin market in the vicinity of the 2700 and 2800 block of Harlem Avenue in Baltimore City. CS2 advised that he/she purchased a distribution quantity of heroin from JACKSON in the spring of 2013.  CS2 further advised that several individuals (later identified directly by law enforcement, as Maxie GRAHAM, Juan BAILEY and Myesha BROWN) are employees of JACKSON's drug shop.  Lastly, CS2 advised JACKSON has robbed illegal gambling operations (dice games) utilizing firearms in the past.

14.     A third confidential source of information (hereinafter "CS3") also provided information about JACKSON and his drug trafficking activities.  CS3 has been involved in drug

4

trafficking in the past, is familiar with the drug trade in Baltimore City and knows JACKSON personally. The information provided by CS3 has been corroborated to the extent possible and proven reliable. CS3 is currently facing drug charges and is working with law enforcement in the hopes of receiving a reduced sentence.

15.     CS3 advised that JACKSON is an upper-level drug dealer who routinely carries firearms during the course of his drug trafficking activities. CS3 advised that JACKSON operates an open-air drug market, selling heroin and crack-cocaine, in the area of the 2700 and 2800 block of Harlem Avenue.  CS3 reported that he learned that JACKSON was in possession of multiple firearms in the summer of 2013 and had a reputation for violence. CS3 further reported that in the summer/fall of 2013, he spoke to JACKSON and that JACKSON discussed the operations of his drug shop.

16.     A fourth confidential source of information (hereinafter "CS4") was also interviewed about the JACKSON DTO.  CS4 has been involved in drug trafficking and has trafficked narcotics with JACKSON in the past.  CS4 has been working with law enforcement for several months and the information provided by CS4 has proven reliable. CS4 is being compensated for providing information to law enforcement.

17.     CS4 has reported that JACKSON is a drug trafficker who operates a drug shop in the 2700 and 2800 block of Harlem Avenue.  CS4 reported that JACKSON typically transports narcotics from his home in Baltimore City to his street-level employees at the drug shop at least twice per day.

5

C.    **SURVEILLANCE OF THE TARGET SUBJECTS**

18.    In early September 2013, investigators conducted surveillance of the 2800 block of Harlem Avenue in Baltimore City.  At approximately 10:50 am, an investigator saw Juan BAILEY, engage in what appeared to be a hand-to-hand drug transaction with a suspected customer in the vicinity of 2805 Harlem Avenue in Baltimore City.  The customer was stopped by investigators a short distance away and found to be in possession of one gelatin capsule of suspected heroin.  The customer told investigators that he (the customer) had just purchased the heroin from a person matching the description of BAILEY who (the customer said) sold heroin in front of his house on Harlem Avenue every day.

19.    Investigators then returned to Harlem Avenue and conducted a field interview of BAILEY.  Asked for his address, BAILEY told the officers he lived at 2805 Harlem Avenue (hereinafter "Bailey's residence").  BAILEY further explained that he lived at the house with his brother Walter SIMON.

20.    In the second week of September 2013, your affiant and other law enforcement officers again conducted surveillance of the 2700 and 2800 block of Harlem Avenue in Baltimore City.  At approximately 9:42am, agents observed JACKSON, operating a silver or grey 2003 Mazda MP-V van, bearing Maryland registration 6BD8989 and registered to JACKSON, arrive at the intersection of Harlem Avenue and North Dukeland Street.  Maxie GRAHAM and Juan BAILEY approached JACKSON's vehicle and briefly leaned into the vehicle.  JACKSON then departed the area.

6

21.     Shortly after JACKSON's departure, investigators saw GRAHAM and BAILEY engage in what appeared to be hand-to-hand drug transactions with suspected drug customers. Given the information provided by CS4 (see paragraph 17), the fact that drug activity increased immediately after JACKSON visited the area and based on my training, knowledge and expertise, I believe that JACKSON delivered a quantity of narcotics to GRAHAM and BAILEY and that GRAHAM and BAILEY then began selling the narcotics to retail customers.

22.     Later that morning, at approximately 10:27am, an investigator observed a suspected drug customer and Walter SIMON (Juan BAILEY's brother) arrive in the 2700 block of Harlem Avenue. SIMON and the customer approached GRAHAM and began a short conversation. The customer then immediately walked to BAILEY, who was sitting on the steps of 2805 Harlem Avenue. BAILEY reached inside the door of 2805 Harlem Avenue, retrieved an unknown object and then engaged in a hand-to-hand transaction with the customer. The customer and SIMON left the area but were stopped by investigators a short time later. The customer was found in possession of one gelcap of what appeared to be heroin which she said she had purchased from an individual fitting BAILEY's description.

23.     Throughout that morning, investigators also saw GRAHAM and BAILEY direct suspected drug customers to two individuals (later identified as Bradrick PAGE and Brandon LONG) standing in the 600 block of Dukeland Avenue. When the suspected buyers approached PAGE and LONG, investigators saw PAGE reach inside his pants, retrieve an object and conduct what appeared to be narcotics transactions with suspected buyers. PAGE was stopped by investigators a short time later and found in possession of 32 ziploc bags of suspected cocaine

base. Given the observations by investigators, the quantity of narcotics recovered and the way in which the narcotics were packaged, I believe, based on my training, knowledge and expertise that PAGE possessed the narcotics with the intent to distribute them.

24.     On another day in mid-September, 2013, investigators surveilled BAILEY, Maxie GRAHAM, Brandon LONG, Zachary NIPPER and Myesha BROWN in the vicinity of the 2800 block of Harlem Avenue. Throughout the morning investigators saw suspected drug customers approach GRAHAM and LONG who directed the customers to BAILEY, located in front of 2805 Harlem Avenue. The customers then met briefly with BAILEY, engaged in what appeared to be hand-to-hand drug transactions and then left the area. When investigators stopped one of these customers, the customer swallowed what appeared to be a gelcap of heroin. The customer was also found in possession of one vial of cocaine base.

25.     Investigators also saw a suspected drug customer approach BROWN who directed the customer to NIPPER. NIPPER and the customer engaged in what appeared to be a drug transaction before the customer left the area. The customer was stopped a short time later and found to be in possession of one gelcap of heroin.

26.     Throughout the morning investigators could hear GRAHAM calling out the word "Motivation" (believed to be the brand name of the heroin sold by the JACKSON DTO) to individuals walking through the block. Investigators also overheard GRAHAM and LONG discussing the fact that law enforcement was in the area and stopping their customers.

27.     On September 23 and 24, 2013, investigators surveilled JACKSON as he drove directly from the vicinity of 1317 Bethany Lane, Baltimore City (JACKSON's residence) to the

vicinity of the drug shop on Harlem Avenue. On both days, investigators saw JACKSON stop near the drug shop, meet briefly with an unidentified individual inside of his vehicle and then leave the area. On both days, investigators noticed that drug activity at the Harlem Avenue shop (which earlier in the day had been limited) dramatically increase immediately after JACKSON's visit to the area. Based on my training, knowledge and expertise and the information provided by CS4 (see paragraph 17), I believe that on September 23 and 24, 2013, JACKSON delivered narcotics from his home to his street-level employees at the Harlem Avenue drug shop who then sold the narcotics to retail customers.

28.     On the morning of October 1, 2013, investigators again conducted surveillance of the 2800 block of Harlem Avenue. At approximately 10:00am, investigators saw BAILEY standing in the doorway of 2805 Harlem Avenue. As investigators watched, several suspected drug customers approached BAILEY and had a brief conversation. After speaking with BAILEY, several of these suspected customers remained in the area. At approximately 10:20 am, JACKSON, driving the Mazda van, arrived in the area. BAILEY entered the passenger side of the vehicle, briefly met with JACKSON and exited the car.  JACKSON then left the area and BAILEY returned to his residence. BAILEY briefly entered the house before returning to the street. Upon exiting the house, BAILEY was immediately approached by the suspected customers who had met with BAILEY earlier that morning and stayed in the area. The suspected customers engaged in what appeared to be hand-to-hand drug transactions and then left the area.

29.     Based on my training, knowledge and expertise, I believe that BAILEY had run out of drugs to sell and requested a resupply from JACKSON, who made a delivery of narcotics

9

to the shop.  BAILEY then secured some portion of the drugs in his residence before returning to serve his customers on Harlem Avenue.

30.     On the same day, investigators saw LONG meet with a suspected drug customer at the corner of Harlem Avenue and Dukeland Street.  Investigators saw the suspected customer hand LONG currency and saw LONG hand the customer what appeared to be quantity of narcotics.  The customer immediately left the area and was stopped by investigators a short time later.  Found on the customer were two Ziploc bags containing what appeared to be crack cocaine.  Investigators then apprehended LONG and found him in possession of 8 Ziploc bags of cocaine base.  Based on the observations by investigators, the quantity of narcotics recovered and the way in which they were packaged, I believe, based on my training, knowledge and expertise that LONG possessed the cocaine base with the intent to distribute it.

31.     On October 4, 2013 investigators surveilling the 2800 block of Harlem Avenue observed Myesha BROWN approach a car parked in the block.  As officers watched, BROWN conducted a hand-to-hand transaction with the driver of the car (who investigators later identified as a drug customer they had stopped in the same area on a prior occasion and found in possession of heroin).  BROWN then entered the car but exited quickly when police approached. Recovered from the floor of the car were two gelcaps of heroin.  Recovered from BROWN was $246.00.  BROWN was arrested and subsequently released.

32.     On October 5, 2013 investigators again saw BROWN approach a car to conduct what investigators believed was a drug transaction.  As officers approached, they saw BROWN drop two gelcaps of suspected heroin.  The heroin was recovered and BROWN placed under

10

arrest. Given the circumstances of BROWN's arrest on both days, I believe, based on my training, knowledge and expertise, that BROWN possessed the heroin on both days with the intent to distribute it.

33.     On October 10, 2013, investigators executed search warrants at 1317 Bethany Lane (JACKSON's residence) and 2805 Harlem Avenue (BAILEY's residence).  At 1317 Bethany Lane, investigators found JACKSON and recovered; 34 vials of suspected cocaine base, two bags containing approximately 3.5 grams of suspected cocaine base, 21 small bags of suspected raw heroin, one large bag containing approximately 2.5 grams of raw heroin, a quantity of cutting agent, drug packaging materials, and a .38 caliber revolver.  From JACKSON's van, which was parked in front of his residence, investigators recovered $1,394 in United States currency.  JACKSON was *Mirandized* and admitted to possessing the narcotics and the firearm.  Based on the quantity of drugs recovered, the presence of narcotics packaging materials, cutting agent, the firearm and the large sum of currency, I believe, based on my training, knowledge and experience, that JACKSON possessed the narcotics recovered from his home with the intent to distribute them.

34.     BAILEY was not found at his residence at the time of the search of 2805 Harlem Avenue.  No contraband was found at his home.

## III.   CONCLUSION

35.     Based on the information provided by the confidential sources, the surveillance conducted by investigators and my own training, knowledge and expertise, I believe that JACKSON is the leader of a drug shop selling heroin and crack cocaine in the 2800 block of

Harlem Avenue.  I believe that JACKSON stores bulk quantities of narcotics at his home on Bethany Lane and delivers the drugs packaged for retail sale to his employees at the shop on a regular basis.  I believe that BAILEY, GRAHAM, LONG, PAGE and BROWN, among others, are employees of the shop.

36.     Accordingly, based on the foregoing facts, I believe probable cause exists to support the issuance of a Criminal Complaint charging JACKSON, BAILEY, GRAHAM, LONG, PAGE and BROWN each with conspiring to knowingly and intentionally possesses with intent to distribute heroin and cocaine base, in violation of Title 21 U.S.C. Section 846.

Troy A. Dannenfelser
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed to and sworn to me this ___10___ day of October, 2013.

Honorable Susan Gauvey
United States Magistrate Judge

12